Batsaihan PURVEEGIIN, Petitioner.

v.

**ATTORNEY GENERAL OF the UNITED STATES.**

No. 07–1227.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit LAR 34.1(a) on July 8, 2009.

Opinion filed: Aug. 25, 2009.

Ayodele Gansallo, Esq., Hias & Council Migration Service of Philadelphia, Philadelphia, PA, for Batsaihan Purveegiin.

Edward J. Duffy, Esq., Michael P. Lindemann, Esq., Jonathan Potter, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Attorney General of the United States.

Before: McKEE, NYGAARD and ROTH, Circuit Judges.

## OPINION

PER CURIAM.

Batsaihan Purveegiin, a native and citizen of Mongolia, entered the United States in 1991 on a student visa to attend art school. He quit school in 1992, for reasons that are not clear from the record. He was convicted by New York authorities of petty larceny, criminal impersonation, and sexual abuse in 1995 and 1996. In 1997, the Government charged Purveegiin as removable for failure to maintain the conditions of admission, 8 U.S.C. § 1227(a)(1)(C)(i), and for convictions of crimes involving moral turpitude, 8 U.S.C. § 1227(a)(2)(A)(i), (ii). Purveegiin conceded removability, but sought (in relevant part [1]) withholding of removal under the Convention Against Torture ("CAT").

1. Purveegiin had previously sought, and been    denied, asylum and withholding of removal

The Immigration Judge ("IJ") granted Purveegiin's CAT claim in 1999. The IJ found that Purveegiin was a credible witness and accepted the following as fact. The Mongolian government had given Purveegiin, an artist, a grant of approximately $20,000 to attend school in New York City. After a change in power in the Mongolian government, the grant was converted to a loan that Purveegiin became obligated to repay. He requested assistance from the Mongolian consulate, but the chief consular official not only denied his request for additional funds but also threatened that, if Purveegiin did not pay back the money, he would be imprisoned. Purveegiin responded by criticizing the Communist Party and certain government officials in Mongolia, which further angered the consular official. The IJ concluded that Purveegiin would be detained upon his return to Mongolia. In addition, the IJ found that Purveegiin had a serious case of diabetes and required daily medication. The IJ noted that without his medication, Purveegiin would face severe or fatal repercussions. Considering Purveegiin's health problem and what the IJ characterized as harsh, unsanitary, and life-threatening conditions in Mongolian prisons, the IJ concluded that the pain and suffering Purveegiin would face on his detention would be anticipated by government officials and constitute torture as it is defined in the CAT.

The Government appealed, and the Board of Immigration Appeals ("BIA") overruled the IJ's decision in 2003. The BIA held that Purveegiin had failed to present credible evidence that he would be imprisoned and tortured if returned to Mongolia. The BIA specifically noted that there was no convincing evidence that Purveegiin would be even briefly detained for failing to pay back his loans or that he

based on allegations that he would suffer per-

would not be provided with medication if imprisoned.

Purveegiin filed a petition for review. Shortly thereafter, the Government filed a motion to remand Purveegiin's case to the BIA in light of *Zubeda v. Ashcroft*, 333 F.3d 463 (3d Cir.2003). We granted the motion in a summary order.

On remand, the BIA, after admitting the 2003 country reports into the record, acted through a single member to reaffirm its reversal of the IJ's decision. Again, the BIA held that Purveegiin had provided insufficient evidence that he would be imprisoned on his return to Mongolia. The BIA also stated that even if Purveegiin were detained on his return, he would not be tortured in light of evidence that prison conditions were improving and that prisons "provided tuberculosis treatment to a large number of prisoners and took steps to limit infection in prisons." Purveegiin filed a motion for reconsideration with the BIA and a petition for review with this Court. When the BIA denied his motion for reconsideration, he filed another petition for review.

We consolidated the matters and granted the consolidated petition, holding that the BIA erred in failing to refer Purveegiin's case to a three-member panel for review. *See Purveegiin v. Gonzales*, 448 F.3d 684, 693 (3d Cir.2006). We concluded that the failure may have affected the BIA's resolution of factual disputes underlying Purveegiin's claims and remanded to the agency to allow a panel of the BIA to pass upon the issues in the first instance. *See id.*

On remand, a three-member panel of the BIA vacated the earlier rulings and considered Purveegiin's CAT claim in light of *Zubeda* and *Auguste v. Ridge*, 395 F.3d

secution if returned to Mongolia.

123 (3d Cir.2005). After reviewing the IJ's conclusions and country reports from 2003 and 2005, the BIA again concluded that Purveegiin had not established that it was more likely than not that he would be tortured on his return to Mongolia.

Specifically, the BIA held that Purveegiin did not establish a likelihood of being detained, noting that although he testified about threats of detention, he did not "present evidence that the Mongolian government typically detains persons at the request of high officials who wish to seek retaliation," or that persons with unpaid student loans are detained. The BIA noted also that Purveegiin had not been charged in Mongolia with a crime and that no warrant existed for his arrest. Assuming Purveegiin would be detained, the BIA further concluded that he had not established that he would be tortured because prison and pre-trial detention conditions had improved. The BIA conceded that insufficient medical care remained a problem, although programs had been instituted to stop the spread of tuberculosis. However, the BIA concluded that even atrocious prison conditions, without more, did not merit a grant of CAT relief. The BIA held that the IJ erred in ruling that "officials' knowledge of the prison conditions in Mongolia, coupled with detaining the respondent so that he would be subjected to those conditions, was sufficient to show intent to inflict severe pain and suffering."

Purveegiin then filed a *pro se* petition for review and a motion for a stay of removal. While the motion was pending and without notifying us in advance (as is the usual practice), the Government removed Purveegiin from the United States. We subsequently converted his motion for a stay of removal into a motion to compel the Government to return him to the United States and granted it. We also appointed counsel for Purveegiin, who remains in Mongolia because he and the Government are at an impasse relating to the terms and conditions of his return to the United States.

Purveegiin, through his counsel, raises four issues in his petition for review: (1) whether the BIA applied the correct legal standard in reviewing his CAT claim; (2) whether the BIA failed to appropriately review his case on remand; (3) whether the BIA properly applied applicable law on specific intent in deciding the CAT claim; and (4) whether we should remand his case to the BIA for further fact-finding in light of changes in circumstances since his return to Mongolia. In short, Purveegiin asks us to vacate the BIA's decision and affirm the IJ's initial decision to grant him CAT relief (he requests further fact-finding as an alternative).

The Government counters that we lack jurisdiction to review Purveegiin's petition under 8 U.S.C. § 1252(a)(2)(C) because Purveegiin is a criminal alien who raises "merely a factual claim that the Board failed to adequately weigh the evidence." Government's Brief 9. Among other things, the Government also argues that *Pierre v. Attorney General of the United States*, 528 F.3d 180 (3d Cir.2008) (*en banc*), precludes success on any claim Purveegiin advances.

We have jurisdiction over Purveegiin's petition for review—which presents legal questions—pursuant to 8 U.S.C. § 1252(a)(1) & (a)(2)(D). Our jurisdiction includes review of the BIA's application of law to undisputed facts. *See Toussaint v. Attorney Gen. of the United States*, 455 F.3d 409, 412 n. 3 (3d Cir.2006). We review questions of law *de novo*. *See Gerbier v. Holmes*, 280 F.3d 297, 302 n. 2 (3d Cir.2002).

The first question is whether the BIA applied the correct standard of review.

Purveegiin argues that although the IJ found him credible and the BIA is presumed to have found him credible, *see Kayembe v. Ashcroft*, 334 F.3d 231, 235 (3d Cir.2003), the BIA inexplicably found that he would not be detained or tortured if returned to Mongolia. The BIA, considering Purveegiin's appeal, originally filed before September 25, 2002, permissibly exercised *de novo* review of the IJ's factual findings and made its own independent findings of fact relating to whether Purveegiin would be detained. *See Matter of S–H–*, 23 I. & N. Dec. 462, 463–65 (BIA 2002) (explaining the change in the regulations governing review by the BIA). Specifically, the BIA ultimately found that Purveegiin would not be detained on return to Mongolia, *see supra*.[2] In considering this petition from a criminal alien, we do not have jurisdiction to review this fact found by the BIA. *See* 8 U.S.C. § 1252(a)(2)(C).

Furthermore, although we are not privy to everything that the BIA may have considered in making this and other factual findings, we see no reason to upset it for lack of analysis. *See Toussaint v. Attorney Gen. of the United States*, 455 F.3d 409, 415 (3d Cir.2006). The BIA set forth enough of its reasoning, namely the absence of an arrest warrant, the lack of evidence that such a detention is typical, and a review of the country reports, to allow us to be confident that it had reasons for its decision. *Cf. id.*

Accordingly, we are left with the question of whether the BIA, in applying the facts, including the fact that Purveegiin would not be detained on his return to Mongolia, applied the right standard, including applicable law on specific intent, when it considered Purveegiin's CAT claim. We have elsewhere summarized the proper standard for withholding under the CAT:

> Under the Convention's implementing regulations "the burden of proof is on the applicant to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). The torture must be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1).

*Tarrawally v. Ashcroft*, 338 F.3d 180, 187–88 (3d Cir.2003).

We have further explained, in relation to detention, inhuman prison conditions, and police mistreatment, the requirement of specific intent in the CAT. *See Pierre*, 528 F.3d at 189–90. Namely, a petitioner cannot obtain CAT relief "unless he can show that his prospective torturer will have the goal or purpose of inflicting severe pain or suffering." *Id.* at 190. In light of its factual finding that Purveegiin would not be detained on his return to Mongolia, a finding that we cannot disturb, the BIA did not err in concluding that Purveegiin would not be tortured in Mongolia. The basis for the torture claim fell away. We need not reach those conclusions the BIA drew in considering whether Purveegiin would face torture after it assumed, *arguendo*, that he would be detained.

We are left with the last question posed by Purveegiin's able appointed counsel—should we remand this matter to the BIA for fact-finding about whether a problem that Purveegiin appears to have in obtaining insulin is related to a deliberate cam-

---

**2.** Although it does not affect our decision, we note that Purveegiin has not, in fact, been detained in Mongolia.

paign to punish him for failing to pay back the loan or for his criticism of government officials. We answer that we should not remand, as there is no basis to do so on the complete and closed record before us. *See* 8 U.S.C. § 1252(b)(4) (directing courts of appeals to decide a petition for review "only on the administrative record on which the order of removal is based"; *see also Berishaj v. Ashcroft*, 378 F.3d 314, 328 (3d Cir.2004)) ("It is a salutary principle of administrative law review that the reviewing court act upon a closed record.").

In conclusion, because the BIA properly reviewed the IJ's decision and applied applicable CAT standards to the unreviewable facts it found, we deny Purveegiin's petition for review.